IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 15-00374-TUC-RCC (LAB) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Carmelo Romero-Cubillas, | ) | |
| Defendants. | ) | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress. The defendant, Carmelo Romero-Cubillas, argues that the evidence in this case should be suppressed because his Fourth Amendment rights were violated when the government used a drug-sniffing dog in the pre-primary area at the Border Patrol immigration checkpoint. (Doc. 19).

An evidentiary hearing was held on August 4, 2015. United States Border Patrol (USBP) Agent Ned P. Ewing testified. Government's Exhibit 1, a map of the area where the checkpoint is located, was admitted.

**<u>Charge:</u>**

Defendant Romero-Cubillas is charged in a three count indictment with conspiracy to possess with intent to distribute cocaine and methamphetamine, possession with intent to distribute cocaine, and possession with intent to distribute methamphetamine, in violation of Title 21 United States Code §§ 841(a)(1) and 841(b)(1)(C);. (Doc. 6).

**Motions to Suppress:**

The defendant argues that the Border Patrol is only permitted to establish checkpoints to interdict aliens who are in the United States illegally. Investigation of general crime at the checkpoint, without individualized suspicion, is unconstitutional. He explains that in the present case, Defendant Romero-Cubillas drove a vehicle into the immigration checkpoint on I-19. While he was waiting in a short line of cars, USBP Agent Ewing and his canine partner Niky walked by the defendant's SUV and the dog alerted. Agent Ewing then signaled the agent in primary inspection to send the vehicle to secondary inspection before any immigration inspection was conducted. The defendant argues that the pre-primary inspection is unconstitutional because a drug-sniffing dog was used to investigate general crime without individualized suspicion.

The government responds (Doc. 23) that the vehicle stop was constitutional because the vehicle was stopped at a fixed immigration checkpoint whose primary purpose is a brief stop to allow agents to determine citizenship. Drug interdiction is a secondary effect which does not invalidate the constitutionality of the checkpoint. The dog sniff did not prolong the lawful stop of the vehicle. The fact that the canine is trained to alert to the presence of humans and drugs does not preclude the dog's presence at the checkpoint.

The Court concludes that search of the vehicle was conducted after probable cause was properly established. It did not violate the defendant's Fourth Amendment rights. The evidence should not be suppressed and should be admissible at trial.

**EVIDENCE:**

***Ned P. Ewing***

Ned Ewing testified that he has been a U.S.B.P. Agent for 11 years and has been stationed at the I-19 checkpoint since 2009. The checkpoint is 26.3 miles from the U.S./Mexico border, as seen on government's Exhibit 1. Agent Ewing is a canine handler who began working with his canine partner, Niky, in September, 2009. He and Niky have been certified annually since 2009, most recently in February, 2015. Niky has proven to be reliable. He is trained to detect people and drugs. His alert is no different whether he detects drugs or

1   people, but he can distinguish between visible occupants in a vehicle and those who are

2   concealed.[1] Niky and Agent Ewing have discovered people hidden in sophisticated, secret

3   compartments in vehicles.  The fact that an agent can see throughout the interior of an SUV

4   does not preclude the possibility that people are concealed in the vehicle.

5       According to Agent Ewing, the primary purpose of the fixed checkpoint on I-19 is

6   immigration.  Agent Ewing works with his dog 80% of the time in the pre-primary inspection

7   area where vehicles slowly approach primary inspection. In that area, about 50% of the dog's

8   alerts result in the discovery of concealed people and about 50% lead to the discovery of

9   drugs.  In general, the alerts are about 3 to 1 in favor of finding humans over drugs at the

10   checkpoint.

11      In primary inspection, immigration status is checked and documents may be requested.

12   Secondary inspection is a safe area off the interstate where further inspection may take place.

13   Canines may be used and people may be asked for consent to search their vehicles.  Beyond

14   secondary inspection is the x-ray area where vehicles may be scanned to look for concealed

15   people and anomalies in the vehicle.

16      On 1/30/15 Agent Ewing and Niky were working in the pre-primary area of the

17   checkpoint when the defendant drove up in a Saturn Vue SUV.  The dog alerted as it walked

18   near the vehicle.  Agent Ewing asked the agent at primary to refer the vehicle to secondary

19   inspection. The driver and three passengers were removed from the vehicle.  An x-ray of the

20   vehicle revealed an anomaly near the backseat.  Niky performed another free air sniff and

21   alerted again.  A search of the interior revealed four screws that appeared to have been

22   tampered with. Access to a compartment was gained when the carpet was lifted and the back

23   seat was moved back.  Quantities of methamphetamine and cocaine were discovered.

24   **DISCUSSION:**

25      The defendant asks that all evidence in this case be suppressed because it was acquired

26   in violation of his Fourth Amendment right to be free from unreasonable search and seizure.

27

28          [1]Neither party asked and the agent did not explain how that is possible.

1   He argues that because the canine at pre-primary inspection is "overtrained" to detect both

2   concealed humans and drugs, the checkpoint has been expanded to unlawfully investigate

3   general crime.  The Court does not agree.

4       The Fourth Amendment requires that searches and seizures be reasonable.  *U.S.C.A.*

5   *Const.Amend. 4*.  Generally a search or seizure is unreasonable in the absence of

6   individualized suspicion of wrongdoing.  *Id*.  While a vehicle stop at an immigration

7   checkpoint is a "seizure", Border Patrol may stop or slow vehicles, and question occupants

8   at a checkpoint, without any individualized suspicion, for Fourth Amendment purposes.  *U.S.*

9   *v. Martinez-Fuente*, 428 U.S. 543, 562 (1976). The stops, however, are permissible only

10  where the intrusion is limited to a brief detention requiring the occupants to respond to a

11  couple of brief questions, perhaps produce documents proving a right to be in the United

12  States, and a visual inspection of the vehicle limited to what can be seen without a search.

13  *Id*. at 558.

14      The defendant takes issue with the fact that a drug-sniffing dog, encountered his vehicle

15  before it approached the agent who would conduct the immigration inspection.  The dog's

16  alert provided information beyond what would have been learned through a few brief

17  questions, inspection of immigration documents and a visual inspection of the vehicle by the

18  agent, as permitted by *Martinez-Fuerte*.

19      The defendant relies on *City of Indianapolis v. Edmond*, 531 U.S. 32, 42 (2000), for the

20  proposition that checkpoints are not approved where the primary purpose is to detect

21  evidence of ordinary criminal wrongdoing.  He argues that by using a dog capable of

22  detecting illegal drugs, in particular at pre-primary inspection before the immigration

23  inspection begins, the checkpoint's primary purpose becomes investigation of general crime.

24      However, an exterior sniff of a vehicle by a drug interdiction dog is not a search, because

25  it is far less intrusive than a typical search and only discloses the presence or absence of

26  illegal drugs. *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000).  There is no reasonable

27  expectation of privacy in guarding against the discovery of contraband.  *Illinois v. Caballes*,

28  543 U.S. 405, 408-9 (2005).

1    The defense cites the Court to *Florida v. Jardines*, 133 S. Ct. 1409, Slip Op. 1 (U.S. 3-26-
2    2013) to argue that a dog sniff is a search.  However the defendant concedes that the Court
3    relied heavily on the fact that the police entered the homeowner's porch to investigate the
4    contents of the home, which the Court held was a search. "One's expectation of privacy in
5    an automobile and of freedom in its operation are significantly different from the traditional
6    expectation of privacy and freedom in one's residence." *Martinez-Fuerte*, 428 U.S. at 561.
7        Finally, the defendant argues that *Rodriguez v. U.S.*, 13-9972, Slip Op. 2 (2015) holds that
8    the government cannot use drug-sniffing dogs to extend the duration of a traffic stop beyond
9    the seizure's "mission".  He claims that using a dog trained to detect drugs, even prior to the
10   immigration inspection, illegally expands the mission of the checkpoint.

11       The government responds that a vehicle stop at a fixed immigration checkpoint, whose
12   primary purpose is a brief stop to determine citizenship, is constitutional, even where the
13   secondary effect is drug interdiction.  It relies on *Illinois v. Caballes* for its argument that a
14   dog sniff during a lawful traffic stop does not violate the Fourth Amendment.  It refers to the
15   holding in *U.S. v. Rodriguez* to support its position that since the initial vehicle stop was
16   lawful, and the dog sniff at pre-primary inspection did not prolong the stop, there is no
17   unconstitutional detention.  The government concludes that the fact that the canine is trained
18   to alert to both humans and drugs, and that the dog alerted at pre-primary instead of primary
19   inspection, does not invalidate the stop of the vehicle or the probable cause that was
20   established and justified sending the vehicle to secondary inspection for further investigation.

21   **CONCLUSION:**

22       In considering the "totality of the circumstances", the Court finds that the primary purpose
23   of the checkpoint is to deter illegal immigration.  That Niky is trained to detect both
24   concealed humans and illegal drugs does not preclude his presence at the checkpoint nor
25   automatically transform the checkpoint into a general crime control device.  The dog sniff
26   is not a search.  It involves minimal intrusion and there is no reasonable expectation of
27   privacy in hidden contraband.  There is no requirement of reasonable suspicion before the
28   dog is permitted to approach vehicles in pre-primary inspection.  The dog alert established

1  probable cause to search the vehicle.  It was then permissible for Agent Ewing to advise the

2  primary inspection agent to send the vehicle to secondary inspection to investigate

3  immigration or illegal drugs.  The actions taken once the vehicle was referred to secondary

4  inspection have not been challenged. The defendants' Fourth Amendment rights were not

5  violated.

6  **RECOMMENDATION:**

7        In view of the foregoing, it is recommended that, after its independent review of the

8  record, the District Court **DENY** the motion to suppress (Doc. 19). Evidence acquired as a

9  result of the stop and search of the vehicle should not be suppressed.

10       Defense counsel may serve and file written objections within 14 days.  If objections

11  are not timely filed, the party's right to de novo review may be waived.

12       The Clerk of the Court is directed to send a copy of this Report and Recommendation

13  to all parties.

14       DATED this 10th day of August, 2015.

15

16

17

18                                                        Leslie A. Bowman

19                                               United States Magistrate Judge

20

21

22

23

24

25

26

27

28